UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA A. MCCOLM,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>STATE OF CALIFORNIA, et al.,<br><br>　　　　Defendants. | CASE No. 1:14-cv-00580-LJO-MJS (PC)<br><br>**ORDER GRANTING LEAVE TO AMEND AS TO PLAINTIFF'S ADA, FIRST AMENDMENT RETALIATION, FOURTEENTH AMENDMENT ACCESS TO COURTS, AND EIGHTH AMENDMENT FAILURE-TO-PROTECT AND EXCESSIVE FORCE CLAIMS;**<br><br>**AND**<br><br>**FINDINGS AND RECOMMENDATION TO DISMISS ALL OTHER CLAIMS WITH PREJUDICE**<br><br>**THIRTY (30) DAY DEADLINE TO AMEND**<br><br>**FOURTEEN (14) DAY OBJECTION DEADLINE** |

Plaintiff is a former state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983.

Plaintiff filed her initial complaint on April 22, 2014. (ECF No. 1.) The Court screened and dismissed it with leave to amend on February 26, 2015 (ECF No. 12.)

After being granted several extensions of time extending over a period of more than two years, Plaintiff filed her first amended complaint ("FAC") on March 13, 2017. (ECF No. 42.) It is now before the Court for screening. (Id.)

**I.　Screening Requirement**

The in forma pauperis statute provides that, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any

time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. Pleading Standard

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) That a right secured by the Constitution or laws of the United States was violated; and (2) That the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

## III. Plaintiff's Allegations

Plaintiff complains of acts that occurred at Central California Women's Facility ("CCWF") in Chowchilla, California. She brings this action against the State of California, California Department of Corrections and Rehabilitation ("CDCR"), California Correctional Health Care Services ("CCHCS"), CCWF, the Governor of the State of

California, Edmund G. Brown, Jr., the Secretary of CDCR, Jeffrey Beard, approximately seventy individual Defendants, and Does 1-100.

In relatively rare instances (each pointed out below), Plaintiff's amended complaint identifies a particular Defendant or Defendants by name and attributes specified wrongful action to him, her, or them. Generally, however, she refers to "Defendants" collectively or as Does.

Plaintiff's allegations extend over 80 pages and are difficult to decipher. The Court summarizes them, as best it can, as follows:

Plaintiff is a 67 year old white female. She suffers from a number of ailments. She has trouble walking and requires a wheelchair. Defendants have conspired to discriminate and retaliate against her on the basis of her race, age, and disability. They failed to provide her with reasonable accommodations and adequate medical care, failed to protect her from harm, and subjected her to excessive force.

Upon arrival at CCWF on February 12, 2013, Plaintiff provided officials with a list of her medications and documentation of her need for a motorized wheelchair, "orthopedic appliances," and left shoulder surgery. The wheelchair and surgery were recommended by non-party physician Richard Marder. His recommendations and Plaintiff's requests for ADA accommodations were ignored, her orthopedic appliances were taken away, and her medications thrown away. Defendants Hunter, Goynes, Sotello, Ormande, and Kennedy specifically "took no steps" to accommodate her disabilities.

Defendants Mitchell, Onyeje, Irwin, and Khoo took Plaintiff's wheelchair. A nurse Defendant threatened to withhold all mobility devices (including a walker) if Plaintiff continued to request a wheelchair. Dr. Gonzales "finally issued" a manual wheelchair, but Defendants Hunter, Ivy, Estrada, Bliss, Parks, Goynes, and Johnson refused to provide someone to push Plaintiff in it. Plaintiff was later issued a walker but suffered "extreme" pain and fell several times attempting to use it. When a nurse had to push

Plaintiff across the yard because no motorized wheelchair was available, the nurse did so "with obvious ire and resentment."

Plaintiff was denied "appropriate pain and other medications prescribed by her personal physicians." Defendant Gonzales gave her an "inadequate dose" of thyroid and/or other medication.

On Defendant Smiths' instruction, an inmate "aggressively" pushed Plaintiff and injured her right shoulder. Gonzales and Nurse Franco Harris examined Plaintiff's left arm and ignored her acute injury and severe pain and provided no pain medication. Eventually, right shoulder surgery was performed by non-party Dr. Marder.

Similarly, an inmate "shoved a table . . . into Plaintiff's leg." Plaintiff requested, but was denied, an MRI of the injured leg.

Plaintiff faced "extreme physical and emotion[al] abuse" from inmates upon transfer to "D Yard." She was denied toilet use, threatened, and verbally abused. Inmates threw toilet paper rolls "and other objects" at her, flushed pages of her notebook down the toilet, and battered her as she tried to recover them. In another room, Plaintiff faced verbal abuse, was spat on by an inmate, and was sprayed "in the face with cleaning chemicals." She suffered "multiple head trauma" and a "broken nose" as a result of inmate abuse. Custody officers did nothing. Eventually, she was transferred to Administrative Segregation for her own protection.

Twenty-six specifically identified Defendants collectively failed to protect her from this abuse. Plaintiff filed a grievance, but it was not processed.

An inmate threw books at Plaintiff, hitting her face. She reported this to Defendant Baron, who "did nothing."

Plaintiff also suffered a succession of other physical abuses by inmates, including Plaintiff being "repeatedly intentionally" hit, repeatedly poked, "attacked from behind," "put in a choke hold," and hit with a walker and a broom. Plaintiff reported these incidents to Defendants Collins, Cain, Self, Gomez, Green, and Johnson, but no action was taken. She was, however, moved to new rooms after most of these incidents.

Plaintiff suffered "severe physical and emotional distress" as a result of the abuse inflicted upon her.

Another time, an inmate punched her in the face and broke her nose. She complained to Defendants Rivera, Ormande, Clark, Hickman, "and others."

Defendant Magdaleno handcuffed her hands tightly, "leaving bruises" on her wrists.

Defendant Cummings stole and tore up some of Plaintiff's legal papers. While doing so, he "inflicted tirades of verbal abuse."

Defendants Bliss, Parks, and other unnamed individuals made verbal threats against her.

Plaintiff was denied pens, paper, access to the law library, and the ability to mail legal materials, thus denying her access to the courts.

Finally, prison officials falsified records of Plaintiff's conviction and previous charges.

**IV. Analysis**

    **A. General Pleading Requirements Not Met**

        **1. Rule 8 Pleading Standards**

Prisoner pro se pleadings are to be given the benefit of liberal construction. See Blaisdell v. Frappiea, 729 F.3d 1237, 1241 (9th Cir. 2013). However, while a court must liberally construe papers filed by pro se plaintiffs, such plaintiffs must nonetheless follow the applicable rules of practice and procedure. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) ("Pro se litigants must follow the same rules of procedure that govern other litigants.")

Federal Rule of Civil Procedure 8 requires that a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 8, "a plaintiff need only plead sufficient allegations of underlying facts to give fair notice and enable the opposing party to defend itself effectively . . . ." Merritt v. Countrywide Fin. Corp., 759 F.3d 1023, 1033 (9th Cir. 2014)

(internal quotation marks and citation omitted). However, Rule 8 is violated when a pleading is unduly lengthy and confusing. See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) ("[W]e have never held—and we know of no authority supporting the proposition—that a pleading may be of unlimited length and opacity.") (citing cases); see also McHenry v. Renne, 84 F.3d 1172, 1179–80 (9th Cir. 1996) (affirming dismissal under Rule 8 and recognizing that "[p]rolix, confusing complaints . . . impose unfair burdens on litigants and judges").

The Court previously advised Plaintiff of its inability to determine from Plaintiff's original complaint which Defendant she felt violated which constitutional rights. Plaintiff's 80-page FAC suffers from the same problem. It is so disjointed, littered with irrelevant information, and, quite simply, so broad and confusing as to leave the Court unable to address individually each of its allegations. Instead, the Court will undertake to identify the potentially viable causes of action reflected in the facts pled and identify what Plaintiff needs to plead to state cognizable causes of action. Plaintiff must carefully review and undertake to comply with this screening order before filing an amended complaint and focus the amended complaint on the claims she is here being given leave to amend. If Plaintiff responds with another lengthy pleading in the same rambling and overly general form as the original and FAC, it likely will be dismissed without leave to amend. Her next pleading should be short. In the Court's experience it is a very rare case that cannot be **pled in twenty pages or less**.

### 2. Linkage

If Plaintiff wishes to proceed against a named Defendant, she must allege specifically what each individual Defendant did to deprive her of her constitutional rights and when and how he or she did so. **She may not simply provide a list of bad things that happened to her and say that all Defendants or a group of them did or enabled those bad things** as she has done in her earlier pleadings.

Specifically, under § 1983, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of her rights. Ashcroft v. Iqbal, 556

U.S. 662, 676-77 (2009); Simmons, 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiffs may not attribute liability to a group of Defendants, but must "set forth specific facts as to each individual defendant's" deprivation of their rights. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Allegations must link specific Defendants' conduct with a specific deprivation of particular rights, and show that the Defendants knew of, but disregarded, a substantial risk to Plaintiff's health or safety. Leer, 844 F.2d at 634.

Moreover, under § 1983, liability may not be imposed on supervisory personnel under the theory of *respondeat superior*, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235. Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor, 880 F.2d at 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark Cty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997). Conclusory claims that the Defendants failed to supervise other correctional officers or healthcare providers, therefore, are not sufficient to state a claim.

### 3. Doe Defendants

Plaintiff lists one-hundred Doe Defendants in her FAC, down from two-hundred and fifty in her original complaint.

The use of Doe defendants is generally disfavored. Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting Gillespie v. Civiletti, 629 E.2d 637, 642 (9th Cir. 1980)). Nevertheless, under certain circumstances, plaintiffs may be given the opportunity to identify unknown defendants through discovery. Gillespie, 629 E.2d at 642. Before a plaintiff may engage in discovery as to unknown defendants, however, she must first link each of them to a constitutional violation.

With some exceptions, Plaintiff does not describe how each Doe Defendant personally participated in violation of her constitutional rights. She must link each individual Doe, identified as Doe 1, Doe 2, and so on, to a specific constitutional violation. She must plead what each Doe did or failed to do to cause the violation. She must include only those Doe Defendants who personally participated in identified deprivations and show how each participated.

### B. Non-cognizable, Irreparable Claims

Plaintiff has alleged, or at least suggested a possible intent to allege, a number of claims which the Court finds, as discussed briefly below, are insufficiently pled and, given the facts that are pled, cannot be successfully amended. Accordingly, the Court recommends that each of the claims in this section be dismissed without leave to amend.

#### 1. Verbal Abuse and Harassment

Throughout her complaint, Plaintiff alleges various inmates and Defendants verbally abused, threatened, and harassed her.

Threats or verbal harassment do not rise to the level of a constitutional violation and, thus, do not give rise to a claim for relief under § 1983. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987); Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). This defect is not capable of cure through amendment.

#### 2. Civil Conspiracy

Throughout her complaint, Plaintiff makes general, omnibus allegations of a conspiracy to violate her rights on account of her race, age, and disability. However, she does little more than allege that groups of Defendants, or all of them, conspired to do all of the things she complains about. Essential elements necessary to plead a conspiracy remain absent.

Having previously been provided the elements and criteria necessary to plead civil conspiracy and having again failed to meet those standards, it is reasonable to

conclude Plaintiff cannot meet them. Accordingly, her civil conspiracy claim should also be dismissed with prejudice.

### 3. Eighth Amendment Inadequate Medical Care

Plaintiff's pleading also criticizes many medical decisions made regarding her and the assistive devices provided and denied her. She complains she was denied proper medication and/or sufficient dosages, a motorized wheelchair and, at times, a manual wheelchair, someone to push her wheelchair, and her orthopedic devices.

Plaintiff's allegations are insufficient to state a claim. Plaintiff's allegation with respect to proper or adequate dosage of medications is a mere difference of medical opinion, insufficient to give rise to a constitutional claim. Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004); Wilson v. Borg, No. 95-15720, 1995 WL 571481, at *2 (9th Cir. Sept. 27, 1995); Smith v. Norrish, No. 94-16906, 1995 WL 267126, at *1 (9th Cir. May 5, 1995); McMican v. Lewis, No. 94-16676, 1995 WL 247177, at *2 (9th Cir. Apr. 27, 1995). Her allegations regarding her left shoulder injury, wheelchairs, wheelchair pushers, and the denial of her orthopedic appliances also fail, as she has no constitutional right to treatment of her choice, id., and because she fails to show deliberate indifference or any resulting harm from any alleged indifference, Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006), or that the delay in providing her medical care led to further injury, Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992).

Here, once again, the Court previously provided Plaintiff with the standards necessary to plead an Eighth Amendment inadequate medical care claim. (ECF Nos. 12, 13.) Plaintiff is unable to meet those standards. Accordingly, her inadequate medical care claim should also be dismissed with prejudice.

### 4. Stolen Property

While prisoners have a protected interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974), the procedural component of the Due Process Clause is not violated by a random, unauthorized deprivation of property if the state

provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517, 533 (1984); Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994). California provides such a remedy. Barnett, 31 F.3d at 816-17 (citing Cal. Gov't Code §§ 810-895).

### 5. Falsification of Records

The creation of false evidence, standing alone, is not actionable under § 1983 because falsely accusing an inmate of misconduct does not violate a right secured by the Constitution or laws of the United States. See Hernandez v. Johnston, 833 F.2d 1316, 1319 (9th Cir. 1987) (noting that an independent right to accurate prison records is not recognized); Johnson v. Felker, No. 1:12-cv-02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim under section 1983.") (citations omitted).

### 6. Section 1981 Violations

Section 1981 addresses protection of a limited range of civil rights, including to make and enforce contracts, to sue, and to give evidence. Law v. Benitez, No. CV F 06-1061 OWW LJO, 2006 WL 2548216, at *4 (E.D. Cal. Sep. 1, 2006). Plaintiff's pleadings reference no such thing.

### 7. Section 1985

To state a conspiracy cause of action under 42 U.S.C. § 1985(3), a plaintiff must allege and prove a conspiracy. See Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992) (citation omitted). However, Plaintiff has not pled elements of a conspiracy or a violation of her constitutional rights. See Caldeira v. County of Kauai, 866 F.2d 1175, 1182 (9th Cir. 1989) (finding that "the absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations"); Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 523–24 (9th Cir. 1994) (affirming dismissal of § 1985(3) claim because plaintiff failed to allege "a violation of his constitutional rights of free speech and due process").

### 8. Section 1986

Section 1986 imposes liability on every person who knows of an impending violation of § 1985 but neglects or refuses to prevent the violation. Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 626 (9th Cir. 1988). Here, Plaintiff does not plead a valid claim under § 1985. Therefore, Plaintiff's § 1986 claim necessarily fails. Id. (citing Trerice v. Pedersen, 769 F.2d 1398, 1403 (9th Cir. 1985)).

### 9. California Penal Code

California Penal Code §§ 2652 to 2656 and §§ 2636 to 2639 do not explicitly provide for a private right of action and such rights are rarely implied. Chrysler Corp. v. Brown, 441 U.S. 281, 316 (1979). Where a private right of action has been implied, "there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone.'" Id. at 316 (quoting Cort v. Ash, 422 U.S. 66, 79 (1975)). No such statutory basis exists under the California Penal Code sections cited by Plaintiff.

### 10. State Law Claims

The Court may exercise supplemental jurisdiction over state law claims in any civil action in which it has original jurisdiction if the state law claims form part of the same case or controversy. 28 U.S.C. § 1367(a). "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). That is the case here. The Court will not exercise supplemental jurisdiction over Plaintiff's state law claims.

## C. Claims Capable of Amendment

The Court finds that the following claims, though insufficiently plead, are potentially capable of being amended. Accordingly, the Court will dismiss them without prejudice and give Plaintiff an opportunity to amend.

### 1. Eighth Amendment Failure-to-Protect

Plaintiff suggests an intent to make a variety of Eighth Amendment failure-to-protect claims.

Her complaint contains numerous allegations of abuse at the hands of inmates. Some of these incidents involved threats and verbal abuse, which, as noted above, are insufficient to state a claim under § 1983. Others, however, allege physical violence, such as being punched in the face, being put in a choke hold, having objects thrown at her, being hit with a broom and a walker, and being sprayed in the face with "cleaning chemicals." She complained to various Defendants, some named, some not, after these incidents, and was either ignored or, in one case, laughed at. However, she also pleads that she was moved after many, if not all, of these incidents, presumably in response to them.

The Court is unable to discern from the existing pleading precisely which Defendants were or should have been aware of which particular episodes of abuse Plaintiff faced, how each was aware, how each was in a position to take protective measures, what, if any, response each made, when each made a response, when, if ever, protective or remedial action was taken in each case, and how Plaintiff suffered as a result of each said episode of delayed or non-existent protective or corrective action.

The Court will grant Plaintiff leave to amend. The legal standards for properly pleading such a claim are stated here:

The Eighth Amendment protects prisoners from inhumane methods of punishment and inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) (quotations omitted). Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners because being violently assaulted in prison is not part of the penalty that criminal offenders pay for their offenses against society. Farmer, 511 U.S. at 833-34 (quotation marks omitted); Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). However, prison officials are liable under the Eighth Amendment only if they demonstrate

12

deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. Farmer, 511 U.S. at 834, 841 (quotations omitted); Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040.

### 2. Eighth Amendment Excessive Force

Plaintiff alleges that Defendant Magdaleno used unlawful excessive force when he handcuffed Plaintiff "so tight that they cut off blood leaving bruises" on her wrists.

As pled, Plaintiff's allegations are insufficient to state a claim for relief for excessive force under the Eighth Amendment. Plaintiff does not provide enough facts for the Court to determine whether her claim against Magdaleno is cognizable. She fails to show that the force used inflicted "unnecessary and wanton infliction of pain."

The Court will grant Plaintiff leave to amend her excessive force claim against Defendant Magdaleno. The legal standards for properly pleading such a claim are as follows:

The Cruel and Unusual Punishment Clause of the Eighth Amendment protects prisoners from the use of excessive physical force. Farmer v. Brennan, 511 U.S. 825, 832 (1994). To state an excessive force claim, a plaintiff must allege facts to show that the use of force involved an "unnecessary and wanton infliction of pain." Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). Whether the force applied inflicted unnecessary and wanton pain turns on whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). The Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. See Whitley, 475 U.S. at 321.

Not "every malevolent touch by a prison guard gives rise to a federal cause of

action." Hudson, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotation marks omitted); see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (noting that the Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries).

### 3. Americans with Disabilities Act and Rehabilitation Act

Plaintiff brings claims under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA"). Plaintiff makes the general allegation throughout her complaint that prison officials failed to provide her with "wheelchair accessible" or "ADA accessible" rooms while she was incarcerated. She also notes that her medical conditions impair her ability to walk.

As pled, Plaintiff's FAC fails to provide sufficient facts for the Court to determine whether she pleads a violation of Title II of the ADA. The Court will grant her leave to amend, and provides her with the standard for pleading an ADA claim:

Title II of the ADA "prohibit[s] discrimination on the basis of disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [she] is a qualified individual with a disability; (2) [she] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [her] disability." Id.

Title II of the ADA applies to inmates within state prisons. Penn. Dep't of Corr. v. Yeskey, 524 U.S. 206, 208 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1022-23 (9th Cir. 1997); Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir. 1996). "There is no significant difference in analysis of the rights and obligations created by the ADA and Rehabilitation Act." Zukle v. Regents of Univ. of Cal., 166 F.3d 1041, 1046 n.11 (9th Cir. 1999); see also Theriault v. Flynn, 162 F.3d 46, 48 n.3 (1st Cir. 1998) ("Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act, and is to be

interpreted consistently with that provision.") "To recover monetary damages under Title II of the ADA, a plaintiff must prove intentional discrimination on the part of the defendant," and the standard for intentional discrimination is deliberate indifference. Duvall v. Cty. of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001).

Under the ADA and RA, a public entity can be held vicariously liable for the acts of its employees. Id. at 1141. States and state entities are not entitled to Eleventh Amendment immunity under Title II of the ADA. Phiffer v. Columbia River Corr. Inst., 384 F.3d 791, 792-93 (9th Cir. 2004) (citing Tennesee v. Lane, 541 U.S. 509 (2004)). Likewise, states also waive Eleventh Amendment immunity under the Rehabilitation Act by accepting federal funds. Id.

### 4. Fourteenth Amendment Access to Courts

Plaintiff asserts she was refused pens, paper, and access to the law library. She also alleges that her attempts to send legal mail were refused. She notes that such denials were in relation to a civil case involving real property and another case "pertaining to her conviction."

Prisoners have a fundamental constitutional right of "meaningful" access to the courts. Lewis v. Casey, 518 U.S. 343, 246 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977). The Supreme Court defines prisoners' right of access to the courts as the "right to bring to court a grievance." Lewis, 518 U.S. at 354. This right is limited to direct criminal appeals, habeas corpus proceedings, and civil rights actions challenging conditions of confinement. Id. at 351. An inmate claiming interference with or denial of access to the courts must show that she suffered an "actual injury," which requires "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis, 518 U.S. at 348. In other words, "actual injury" requires a plaintiff to identify "a specific instance in which an inmate was actually denied access to the courts." Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir. 1989).

Plaintiff fails to state a claim here. First, Plaintiff does not have a constitutional right of access to the courts with respect to her civil real property case. In addition, inmates do not have a constitutional right to a law library or legal assistance. Lewis, 518 U.S. at 351 (explaining there is not "an abstract, freestanding right to a law library or legal assistance").

However, it is unclear whether Plaintiff's case "pertaining to her conviction" is a habeas petition or a direct criminal appeal. Accordingly, the Court will grant Plaintiff leave to amend.

### 5. First Amendment Retaliation

Throughout her FAC, Plaintiff alleges that Defendants retaliated against her for raising grievances with respect to her treatment and lack of accommodations for her disability.

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). "Of fundamental import to prisoners are their First Amendment 'right[s] to file prison grievances,' [citation], and to 'pursue civil rights litigation in the courts.'" Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005) (quoting Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003) and Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir.1995)); see also Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (noting that prisoners have a constitutional right to meaningful access to the courts, and prison authorities may not penalize or retaliate against an inmate for exercising that right). Allegations of retaliation against a prisoner for exercising her First Amendment rights to speech, to petition the government, or to file a prison grievance can support a § 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985). "And because purely retaliatory actions taken against prisoners for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield."

Rhodes, 408 F.3d at 567; see Austin v. Terhune, 367 F.3d 1167, 1170–71 (9th Cir. 2004); see also Pratt v. Rowland, 65 F.3d 802, 806 & n. 4, 807 (9th Cir. 1995).

A valid retaliation claim is comprised of five essential elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not advance a legitimate correctional goal." Rhodes, 408 F.3d at 567–68. A prisoner suing prison officials under § 1983 for retaliation "must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." Barnett v. Centoni, 31 F.3d 813, 815–16 (9th Cir. 1994) (per curiam). A variety of conduct can be actionable as retaliatory if undertaken for an improper purpose. See, e.g., Rizzo, 778 F.2d at 531–32 (holding prison officials could not transfer an inmate to another prison in retaliation for the inmate's exercise of his First Amendment right to pursue federal civil rights litigation, regardless of whether inmates have an independent right to be held at any particular prison or in any given type of cell). The resulting injury need not be tangible to support the claim. Hines v. Gomez, 108 F.3d 265, 267, 269 (9th Cir. 1997) (noting that an injury asserted to be the chilling effect of an officer's false accusation on the prisoner's First Amendment right to file prison grievances is a sufficiently substantial basis on which to found a retaliation claim).

Plaintiff again fails to state a claim. She fails to show any adverse action taken by Defendants in retaliation of any protected conduct she engaged in. Mere threats of adverse action are insufficient to plead a cognizable claim here.

Plaintiff will be given leave to amend her First Amendment retaliation claim.

**V.     Conclusion, Recommendation, and Order**

Plaintiff's FAC fails to state a cognizable claim for relief. The Court will grant Plaintiff **one final opportunity to file an amended complaint only with regard to the five claims analyzed in Section IV.C., above**. Noll v. Carlson, 809 F.2d 1446, 1448-49

17

(9th Cir. 1987). If Plaintiff chooses to amend, she must demonstrate that the alleged acts resulted in a deprivation of her constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555 (2007)). Plaintiff must also demonstrate that each named Defendant personally participated in a deprivation of her rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Although Plaintiff is being given the opportunity to amend, it is not for the purpose of adding new claims, George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007), or amending any of the claims discussed in Section IV.B., above. **Plaintiff should carefully read this screening order and focus her efforts on curing the deficiencies in the five claims analyzed in Section IV.C.**

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. Plaintiff's amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury. **The amended complaint should be brief**. Again, the court can envision no reason why the five claims subject to amendment could not be amended and asserted in **twenty pages or less**.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. All claims, except for Plaintiff's ADA, First Amendment retaliation, Fourteenth Amendment access to courts, and Eighth Amendment excessive force and failure-to-protect claims, be dismissed, with prejudice.

Additionally, it is HEREBY ORDERED that:

1. Plaintiff's first amended complaint is dismissed for failure to state a claim on which relief may be granted;

2. The Clerk's Office shall send Plaintiff a blank civil rights complaint form and a copy of her first amended complaint, filed March 13, 2017;

3. Within thirty (30) days from the date of service of this Order, Plaintiff must file a second amended complaint curing the deficiencies identified by the Court as regard to the **five claims in Section IV.C. only**, or a notice of voluntary dismissal; and

4. If Plaintiff fails to file a second amended complaint within the limits described above or notice of voluntary dismissal, the Court will recommend the action be dismissed, with prejudice, for failure to comply with a court order, failure to state a claim, and failure to prosecute, subject to the "three strikes" provision set forth in 28 U.S.C. § 1915(g).

The Court's findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: August 11, 2017 /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE